CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

04/20/2020
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

UNITED STATES OF AMERICA

v.

KAREEM ANTOINE TURNER,

*Defendant.*

CASE NO. 3:09-cr-00018

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court on Defendant Kareem Antoine Turner's Motion to Reduce Sentence Pursuant to the First Step Act of 2018. Dkt. 262. In Defendant's most recent filing, he argues that the novel coronavirus COVID-19 pandemic further supports his request for immediate release. Dkt. 278. Upon review of Defendant's First Step Act Motion and the parties' briefing on the motion, this Court finds that Defendant is eligible for seek relief under the First Step Act, and that Defendant has demonstrated an entitlement to a partially reduced sentence of 168 months' imprisonment—twelve months less than his original sentence—but in no event shall his sentence be less than time served.

## Background

1. *Underlying Criminal Charges and Sentence*

On September 30, 2010, Defendant pleaded guilty pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure to two counts of the Superseding Indictment. Dkt. 150; Dkt. 18. Defendant pleaded guilty to Count One, which charged him with conspiracy "to commit the following offenses against the United States: 1) to possess with intent to distribute and to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine

1

base, a Schedule II Narcotic Controlled Substance; 2) to possess with intent to distribute and to distribute 5 Kilograms or more of a mixture or substance containing a detectable amount [of] cocaine, a Schedule II Narcotic Controlled Substance," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. Dkt. 150; Dkt. 18. Defendant also pleaded guilty to Count Six of the Superseding Indictment: receiving stolen firearms in violation of 18 U.S.C. § 922(j). Dkt. 262 at 2; Dkt. 172; Dkt. 150.

Defendant's plea agreement and the presentence report ("PSR") noted that Defendant's statutory mandatory minimum sentence on Count One was 120 months. Dkt. 262 at 2; Dkt. 263 at 12; Dkt. 150 at 1. The plea agreement stated, in relevant part, as follows:

> I will enter a plea of guilty to Counts 1 and 6 of the Superseding Indictment.
>
> Count 1 charges me with conspiring to possess with intent to distribute and distribute more than 50 grams or more of a mixture or substance containing a detectable amount of cocaine base and 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A). The maximum statutory penalty is a fine of $4,000,000 and/or imprisonment for a term of life, plus a term of supervised release. There is a mandatory minimum sentence for a term of ten years.

Dkt. 150 at 1.

The plea agreement further stipulated pursuant to Rule 11(c)(1)(C) that Defendant would be sentenced to a total of 180 months' incarceration on Counts One and Six, and to dismissal of the other counts. Dkt. 263 at 13; Dkt. 150 at 3.

The Rule 11 colloquy also addressed Count One (as well as Count Six, which will not be recited here). When asked by the Court "to summarize for the defendant the elements of the offense and the range of punishment provided for such offenses," the Government stated:

> Pursuant to the plea agreement, the defendant is going to be pleading guilty to Counts 1 and 6 of the superseding indictment.

> With regards to Count 1, the elements are as follows. It alleges a conspiracy to distribute more than 5 kilograms of cocaine powder and 50 grams or more of cocaine base.
>
> Mr. Turner, the elements of that charge are as follows: The United States would be required to prove that you knowingly participated in a conspiracy, conspiring with others, and that … you entered into an agreement, either tacit or express, to do the following, and that's alleged in the indictment, possess with intent to distribute 50 grams or more of cocaine base and also 5 kilograms or more of cocaine powder during the period alleged in the indictment, between December, 2002 and July 15, 2008.
>
> The penalties of that offense are as follows: There's a mandatory minimum sentence of ten years imprisonment, up to a maximum sentence of life. There's a maximum of $4 million fine and also a period of supervised release.

Dkt. 225-4 at 5–6.

At the Rule 11 colloquy, the Government further summarized evidence of Defendant's involvement in the conspiracy at issue in the case. This included, among other things, that "the defendant was selling at least ten ounces of crack cocaine per week and that he would obtain his cocaine from a source up in New York," that "[e]ither the defendant or somebody acting at his behalf would fly from Charlottesville to New York to pick up one or two kilograms of cocaine, as well as some cocaine base and then bring that back to Charlottesville," that "from late 2007 to June 11, 2008," other parties "would travel to New York to get one or two kilograms of cocaine from the defendant, about once a week," and that "[n]umerous witnesses would have testified at trial that they purchased various amounts of crack cocaine from the defendant and also delivered crack cocaine and powder cocaine from the defendant during the time of the conspiracy." Dkt. 225-4 at 14–15. Defendant did not challenge the Government's summation of the evidence or put on any evidence of its own. *Id.* at 16. When the Court asked how he pleaded to the two counts, Defendant responded "Guilty." *Id.*

3

On December 21, 2010, pursuant to Rule 11(c)(1)(C), this Court sentenced Defendant to 180 months' incarceration on Count One and 120 months' incarceration on Count Six, to run concurrently. Dkt. 262 at 2; Dkt. 172 at 2.

Defendant subsequently filed a pro se appeal, which was dismissed as untimely. Dkt. 200–201. Defendant filed several motions to vacate his sentence pursuant to 28 U.S.C. § 2255, which were denied. Dkt. 188–89, 212, 234. Defendant also filed motions to reduce his sentence pursuant to Amendments 750 and 782, which were also denied. Dkt. 238, 251.

2. *First Step Act Motion and Supplemental Briefing*

In February 2019, Defendant filed the motion presently before the Court, seeking a reduction in sentence pursuant to the First Step Act. Dkt. 262. In April 2019, both Defendant and the Government filed responses to Defendant's First Step Act Motion. Dkt. 269, 270. The response from the Government was little more than two pages, styled as a "Motion to Dismiss" the First Step Act Motion. Dkt. 270. These were followed by Defendant's reply filed in May 2019, in further support of the Motion. Dkt. 272. In December 2019, Defendant filed a letter concerning his request for reduction in sentence. Dkt. 273. And on February 29, 2020, Defendant filed a supplemental response in further support of his First Step Act Motion. Dkt. 276.

On March 4, 2020, the Court entered an order stating that, since "the primary issue in this Motion is presently on appeal to the Fourth Circuit and awaiting decision," the Court would place Defendant's First Step Act motion in abeyance pending issuance of the Fourth Circuit's opinion in *United States v. Gravatt*, No. 19-6852 (4th Cir.). *See* Dkt. 277. At issue in that case was "whether a district court erred in determining that the defendant was not eligible for a sentence reduction under § 404 of the First Step Act because he pleaded guilty to conspiring to distribute 5 kilograms or more of powder cocaine *and* 50 grams or more of cocaine base." Dkt. 277 at 1. The Court directed the parties to file supplemental briefs after *Gravatt* was issued, and to address "any

4

arguments the parties deem relevant to the Court's exercise of its discretion to grant a reduction in sentence under the First Step Act." *Id.* at 2.

On March 24, 2020—the day after the Fourth Circuit issued its decision in *Gravatt*, Defendant filed a combined Notice and "Renewed Request for Immediate Release in Light of Heightened Risk for COVID-19." Dkt. 278. Defendant argues that under *Gravatt*, he is eligible to move for relief under the First Step Act. *Id.* at 1–2. In addition, citing declarations from medical professionals addressing the novel coronavirus COVID-19, Defendant argues that the "seriousness of COVID-19 and the particular risk that incarcerated populations face is another reason that supports [Defendant's] immediate reduction in his sentence to time-served." Dkt. 278 at 5.

On April 2, 2020, the Government filed its Supplemental Response to Defendant's First Step Act Motion. Dkt. 287. While the Government now concedes that Defendant is eligible to move for relief under the First Step Act, *id.* at 8–10, it argues that Defendant has not shown an entitlement to such discretionary relief, *id.* at 10–13.

Defendant is currently incarcerated. The Federal Bureau of Prisons website calculates his release date will be April 4, 2022. Dkt. 287 at 3.

### Legal Framework

Section 404(b) of the First Step Act, the provision under which Defendant seeks relief, states that:

> Defendants Previously Sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222. The First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by

[S]ection 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a), 132 Stat. at 5222. A later provision, Section 404(c), states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.* § 404(c), 132 Stat. at 5222. In other words, the First Step Act gives the district courts discretion whether to afford relief to eligible defendants. *United States v. Gravatt*, 953 F.3d 258, 261 (4th Cir. 2020); *United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019). Whether a defendant is "eligible" to move for relief under the First Step Act depends on whether he committed a "covered offense"—there is no other "eligibility requirement" beyond that "threshold question." *Gravatt*, 953 F.3d at 262.

Modifications of sentences pursuant to the First Step Act are governed by 18 U.S.C. § 3582(c)(1)(B), which states that "[t]he court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *See also Wirsing*, 943 F.3d at 183 ("We hold that § 3582(c)(1)(B) is the appropriate vehicle for a First Step Act motion."). And, in determining a defendant's eligibility under § 3582(c)(1)(B), a court "must look to the applicable statute to determine 'the extent' to which modification is 'expressly permitted by [that] statute.'" *Wirsing*, 943 F.3d at 185 (quoting 18 U.S.C. § 3582(c)(1)(B)).

Even where a court has the *authority* to consider a defendant's request to modify his sentence, that does not end the inquiry. The question remains whether the defendant has shown that a reduced sentence under the First Step Act is warranted. *See United States v. Venable*, 943 F.3d 187, 194–95 (4th Cir. 2019) (distinguishing between the court's holding that a district court had authority to resentence a defendant, and whether the defendant was entitled to the exercise of such authority); *Gravatt*, 953 F.3d at 262 (even if a defendant is "eligible" to move for relief, that

"does not mean the defendant is entitled to relief under the Act," rather, "[i]t only means that his motion is entitled to be considered on the merits").

Covered Offense

This Court will first consider whether Defendant has committed a "covered offense" within the meaning of the First Step Act. The Government initially raised two arguments why Defendant's conviction in Count One is not "covered offense." But in its recent filing, the Government concedes that subsequent Fourth Circuit authority has since rejected these arguments on eligibility.

First, the Government had argued Defendant was not eligible for relief because, in the PSR, Defendant "was found responsible for 8.4 kilograms of cocaine base, far above the 280 grams that trigger the 10-year mandatory minimum under the Fair Sentencing Act." Dkt. 270 at 3 n.2; *see also* Dkt. 287 at 8–9 (noting that the Government "has also argued that eligibility under the First Step Act should be determined by considering the drug weight involved in the offense," and here, the PSR—adopted by the Court at sentencing—showed Defendant's offense "involved over 8.4 kilograms of crack cocaine"). However, the Government now writes that "both this Court and the Court of Appeals, in binding precedent, have rejected the United States' argument and held a defendant is eligible to seek relief under the First Step Act if 'before August 3, 2010, he committed a violation of 21 U.S.C. § 841(a) and (b)(1)(B)(iii), and the statutory penalties for that statute were modified by Section 2 of the Fair Sentencing Act.'" Dkt. 287 at 9 (quoting *Wirsing*, 943 F.3d at 186). According to the Government, that principle applies regardless of the drug amount found at sentencing to have been involved in the offense. Dkt. 287 at 9.

The Court agrees it "must look to the statute of conviction to determine eligibility, rather than the drug weight actually involved in the offense." *United States v. Davis*, No. 5:93-cr-30025, 2020 WL 1131147, at *2 (W.D. Va. Mar. 9, 2020) (Jones, J.), *appeal filed* (4th Cir. Mar. 20, 2020).

Defendant was convicted before 2010 of violating 21 U.S.C. § 841(b)(1)(A), in part by conspiring to distribute 50 grams or more of cocaine base. Dkt. 18, 150 at 1. But the Fair Sentencing Act amended this provision "from requiring 50 grams or more of crack cocaine to 280 grams or more, to trigger the sentencing range of a ten-year minimum to a maximum of life." *Gravatt*, 953 F.3d at 263. The Fair Sentencing Act modified the statutory penalties for violation of this federal criminal statute, and further, the express limitations of the First Step Act are not implicated here.[1] Dkt. 262 at 4.

However, as in *Gravatt*, the fact that Defendant was charged conjunctively with conspiring to distribute cocaine and cocaine base requires an additional analytical step. To this end, the Government here had also raised the same argument it made in *Gravatt*—that Defendant was not eligible for relief under the First Step Act because Defendant was convicted of conspiracy to distribute five kilograms or more of cocaine, as well as 50 grams or more of cocaine base. *See* Dkt. 270 at 2; Dkt. 18. The Government argued that offense "is not implicated by the changes in the Fair Sentencing Act," because that Act "did not alter the threshold for mandatory minimum sentencing based upon five kilograms or more of cocaine." Dkt. 270 at 2. Accordingly, the Government had asserted that Defendant "is not eligible for consideration of a reduction under the terms of the First Step Act" *Id.* at 2–3 & n.2.

As mentioned, this Court stayed consideration of Defendant's First Step Act motion pending the Fourth Circuit's decision in *Gravatt*. Dkt. 277. On March 23, 2020, the Fourth Circuit

---

[1] "Section 404(c) contains two express limitations on the application of Section 404(b). In other words, even if a sentence involves a covered offense," [1] "[n]o court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010," or [2] "if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." *Gravatt*, 953 F.3d at 260.

issued its opinion in that case, which concerned the same question as here: "whether a conspiracy that involves the distribution of 50 or more grams of crack cocaine, which is a 'covered offense' under the Act because the penalties for it were modified by the Fair Sentencing Act, remains a covered offense if the conspiracy also charges distribution of powder cocaine, the penalties for which were not modified." *Gravatt*, 953 F.3d at 259.

The Fourth Circuit held that even though the defendant "was charged conjunctively with conspiring to distribute both powder and crack cocaine," the defendant still was convicted of a covered offense. *Id.* at 264. The court saw "nothing in the text of the Act requiring that a defendant be convicted of a single violation of a federal criminal statute whose penalties were modified by section 2 or section 3 of the Fair Sentencing Act." *Id.* The Government's position "would, in effect, impose an additional limitation to the Act's applicability," and, "[i]f Congress had intended for the Act not to apply if a covered offense was combined with an offense that is not covered, it would have included that language. But it did not." *Id.*

Accordingly, following *Gravatt*, there is no dispute that Defendant committed a "covered offense" and that his First Step Act motion is entitled to consideration on its merits. Dkt. 287 at 8; Dkt. 278 at 1–2.[2]

<u>Consideration of Request to Modify Defendant's Sentence</u>

1. *Request for Reduction in Sentence Based on "Disproportionate Impact of Mandatory Minimum Sentences"*

Defendant contends that a reduction in his sentence is appropriate and "consistent with the intention of Congress to remedy the disproportionate impact of the mandatory minimum sentences

---

[2] Though the issue was not raised by the parties, the Court notes that the fact that Defendant was sentenced pursuant to a Rule 11(c)(1)(C) agreement does not present a bar to Defendant's eligibility to seek relief under the First Step Act. *See United States v. Miller*, No. 4:05-cr-36, 2019 WL 6841963, at *1 (D.S.C. Dec. 16, 2019), *appeal filed*, (4th Cir. Jan. 2, 2020).

applied to crack cocaine offenses prior to 2010." Dkt. 262 at 4. Defendant argues that under the Fair Sentencing Act, his mandatory minimum on Count One—conspiracy to distribute cocaine— would be just 60 months, instead of 120 months as at the time of his sentencing. *Id.* at 3–4. In addition, Defendant notes that his sentencing guideline range was 324–405 months at the time of his sentencing; today, that range would be 262–327 months. *Id.* at 4. Accordingly, Defendant asserts that a sentence of 145 months would represent "a proportionate reduction of his sentence"; the imposition of which, at this time, would result in immediate release. *Id.* at 1, 4; Dkt. 278. The Government agrees with Defendant that the new mandatory minimum for Defendant's offense involving cocaine base is 60 months, and that Defendant's adjusted guideline range would be 262– 327 months. Dkt. 287 at 9–10 & n.2.

Still, the Government argues that no reduction is warranted for three reasons.

First, the Government argues that Defendant's sentence imposed pursuant to Rule 11(c)(1)(C) "is already substantially below" the adjusted guideline level. *Id.* at 10. The Government argues that "[a]n additional variance below the guideline range should not be granted to ensure parity with defendants who were sentenced after the Fair Sentencing Act and were not eligible for consideration of sentences below the guideline range at the implementation of the reduction granted by Amendment 782." *Id.*

Second, the Government asserts that Defendant already received an "extremely favorable plea agreement," which resulted in a sentence that was an almost 50 percent reduction from the initial guideline range. Dkt. 287 at 10. Moreover, the Government notes that it also agreed not to file a § 851 Information, "which would have doubled the mandatory minimum sentence on the drug charge," and to dismiss a § 924(c) charge, "which carried an additional consecutive mandatory minimum sentence." *Id.* at 10–11.

10

Third, the Government argues that a reduced sentence is not warranted considering "the serious and violent conduct" Defendant engaged in, including, as the PSR describes, bringing at least 8.4 kilograms of cocaine base from New York into Virginia, and knowingly purchasing a number of stolen firearms, including pistols and "a combat shotgun." *Id.* at 11. Most significantly, Defendant "shot Alston Perrin on orders of [co-defendant] Marshman after a drug deal in which Marshman felt Perrin disrespected him." *Id.*

The Court finds that Defendant has demonstrated that a reduction of his original sentence of 180 months' imprisonment to 168 months' imprisonment is warranted. This is not as great of a sentence reduction as Defendant had requested (145 months); nonetheless, the Court finds for the following reasons that 168 months is an appropriate sentence and no greater than necessary to satisfy the factors set forth in 18 U.S.C. § 3553(a). In no event shall Defendant's sentence be less than time served.

At sentencing, Defendant was subject to a 120 month mandatory minimum on Count One. Today, his mandatory minimum for conspiring to distribute 50 grams or more of crack cocaine would be just 60 months.[3] Dkt. 262 at 4; Dkt. 287 at 9. And, at sentencing, Defendant was subject

---

[3] Because Defendant's offense in Count One involved 50 grams or more of crack cocaine but not 280 grams, the new mandatory minimum for that offense is 60 months. *See* Dkt. 287 at 9 (citing 21 U.S.C. § 841(b)(1)(B) (2018)). However, in Count One Defendant was also charged with and pleaded guilty to distributing 5 kilograms or more of cocaine, and "the Fair Sentencing Act did not amend the penalties in 21 U.S.C. § 841(b)(1)(A)(ii) regarding powder cocaine." *Gravatt*, 953 F.3d at 263. Thus, Defendant was, and remains, subject to a 120 month-mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(A)(ii).

The Fourth Circuit explained that in this circumstance—where a defendant was charged conjunctively with conspiring to distribute both powder cocaine and crack cocaine—that qualifies as a "covered offense" under the First Step Act, but nonetheless, "statutory mandatory minimum terms remain in effect for certain drug offenses," *Gravatt*, 953 F.3d at 264 & n.5. And even if "a defendant's sentence involves a covered offense, the district court's review of a defendant's First Step Act motion cannot avoid those statutory requirements." *Id.* at 264 n.5. Indeed, in the *Gravatt* case on remand, there is no dispute that the defendant still is subject to a 120-month mandatory

to a guideline range of 324–405 months; today, he is subject to an adjusted guideline range of 262–327-months. Dkt. 262 at 4; Dkt. 287 at 10 & n.2. Even where, as here, the Court's original sentence was below the then-applicable guideline range, the Court has authority on a First Step Act motion to impose a sentence varying further downward from the advisory guideline range. *See United States v. Carter*, No. 7:09-cr-27, 2019 WL 2477626, at \*3 (W.D. Va. June 13, 2019) (Dillon, J.) ("nothing in the First Step Act limits the court's ability to impose a sentence below the adjusted guideline range commensurate with a variance sentence initially imposed"); *United States v. Wood*, 6:09-cr-7, 2019 WL 1510005 (W.D. Va. Apr. 5, 2019) (Moon, J.) (imposing comparable downward variance).

To the extent that the Government argues that the Court should not vary below the guideline range here "to ensure parity" with those sentenced after the Fair Sentencing Act that were not eligible for a below-guideline-range sentence under Amendment 782, Dkt. 287 at 10, the Court rejects that argument. The Court will not "refrain from applying the First Step Act" to Defendant, who is otherwise eligible to consideration for relief, simply because "it does not apply to all previously sentenced defendants convicted of cocaine base offenses." *United States v. Barber*, 409 F. Supp. 3d 542, 547 (W.D. Va. 2019) (Urbanski, C.J.); *see also Carter*, 2020 WL 2477626, at \*4 (similar).

The Government has also argued that a further variance is not warranted since Defendant already received an "extremely favorable plea agreement." Dkt. 287 at 10. That may be, but the

---

minimum. *See* Gov't Supp. Resp., Dkt. 629, *United States v. Gravatt*, 5:01-cr-736 (D.S.C. Apr. 14, 2020) at 4 (noting that Gravatt "still faces the same statutory penalties—a mandatory minimum of 10 years to life imprisonment …"); Def's Reply, Dkt. 630. While this Court concludes that Defendant remains subject to a 120-month mandatory minimum sentence on Count One as a result of his distribution of 5 kilograms or more of powder cocaine, the Court would have found Defendant entitled to a reduction of sentence to 168 months even if Defendant's mandatory minimum was 60 months.

Court presumes that the Government agreed to that plea agreement because it got something out of the plea agreement as well, including not having to expend the resources required bring the case to trial. Nor is the Court persuaded that charges the Government asserts could have been brought, or an § 851 Information that could have been filed, counsel against a greater reduction. *Cf. United States v. Robinson*, No. 5:06-cr-14, 2019 WL 5967967, at *4 (W.D. Va. Nov. 13, 2019) (Urbanski, C.J.) ("Nearly all other district courts, including this one, have rejected the notion that a court should engage in a series of hypotheticals about what might have happened had aspects of the case been fundamentally altered." (internal quotation marks omitted)).

In determining whether a reduction in sentence is appropriate under the § 3553(a) factors, and the extent of any such reduction, the Court has considered the parties' briefs and supporting materials, Dkt. 262, 269, 270, 272, 273, 276, 278, 287, the adjusted guideline range, as well as the PSR, Dkt. 214. The Court finds that a reduction of Defendant's sentence is warranted under the § 3553(a) factors, though the Court cannot agree with Defendant that a proportionate reduction in his variance sentence is warranted here, given the nature and seriousness of the offense, and the need to promote respect for the law.

Defendant was not a marginal player in the charged conspiracy to distribute crack cocaine in Charlottesville. Defendant and his co-conspirators engaged others to travel to New York to purchase substantial quantities of cocaine and crack cocaine for distribution in Charlottesville. Dkt. 225-4 at 14–15. And indeed, even while Defendant was incarcerated in New York from 2006 to 2007, he continued to coordinate with his co-conspirators, providing information about drug amounts, prices and customers; and then, when Defendant was released from custody in 2007, he became a New York source of supply for co-conspirators. Dkt. 214 at 5. Moreover, as recounted in the PSR and recited above, Defendant was an active participant in violent "drug disputes and turf battles.". Dkt. 214 at 4; Dkt. 287 at 11. However, all these incidents are between 12 and 15

years old, and Defendant has been in custody since 2009. Dkt. 58. Nor has the Government presented evidence of post-sentencing conduct that would tend to show that Defendant would return to a life of drug trafficking or would present a threat to the public. *See* Dkt. 287.

In addition, Defendant has introduced evidence of post-sentencing mitigation, including letters from his family supporting his early release, writing that he has remained involved with and raised his children to the best of his ability while he has been incarcerated. Dkt. 276-1, 276-2, 276-3. His family writes that he has "learned from past mistakes" and that he is looking forward to securing a job and a career upon his release. Dkt. 276-1, 276-3. Such letters reflect sustained family connections and support network that will be critical to Defendant's readjustment following the conclusion of his sentence.

2. *Request for Immediate Release on Account of COVID-19*

In Defendant's March 24, 2020 filing, he also makes a "renewed request for immediate release" on account of the novel coronavirus COVID-19 pandemic. Dkt. 278. Defendant writes that this global pandemic has infected hundreds of thousands of people, killed tens of thousands, and that "[t]he incarcerated are particularly vulnerable." *Id.* at 2. Defendant cites examples from localities which have established plans to reduce prison populations in response to the COVID-19 pandemic, and Defendant argues that "the federal government should do the same." *Id.* at 5. In support of this argument, Defendant cites and attaches declarations from medical professionals.[4]

The Court notes that Defendant raises justifiable concerns about risks he faces on account of the COVID-19 pandemic, but he does so within a First Step Act motion for relief under

---

[4] *See* Decl. of Dr. Chris Beyrer, Director of the Center for Public Health and Human Rights and Johns Hopkins, Dkt. 278-1 ("Beyrer Decl."); Decl. of Dr. Jonathan Golob, Assistant Professor at University of Michigan School of Medicine, Dkt. 278-2 ("Golob Decl."); Decl. of Dr. Jaimie Meyer, Assistant Professor at Yale School of Medicine, Dkt. 278-3 and submitted originally in *Velesaca v. Wolf*, 1:20-cv-1803 (S.D.N.Y. Mar. 16, 2020) ("Meyer Decl.").

§ 404(b)—a mechanism for defendants to seek a reduced sentence on account of disparate punishments for crack cocaine offenses compared with cocaine offenses. *See generally Wirsing*, 943 F.3d at 180. A motion for sentence reduction under § 404(b) is not a natural or common place to raise this argument. And Defendant has not moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), which was modified by other provisions in the First Step Act, to seek compassionate release on the basis that "extraordinary and compelling reasons" justify release. Defendant does not cite any cases raising COVID-19 concerns in the specific context of a § 404(b) motion for reduction in sentence. It is perhaps that incongruity which prompted the Government to argue that Defendant is "asking the Court to conclude that an unauthorized factor"—*i.e.*, the risk that COVID-19 poses to prison populations—"outweighs the authorized sentencing factors of 18 U.S.C. § 3553(a)." Dkt. 287 at 13–14.

Even assuming the Court can consider Defendant's arguments on the risks presented by COVID-19 in his First Step Act § 404(b) motion in the Court's § 3553(a) analysis, the Court concludes they do not substantiate his request for immediate release. Defendant's evidence does not demonstrate why Defendant is at any increased risk of COVID-19—for example, based on the conditions of his facility or conditions of confinement, or due to health considerations—beyond those that are faced by the federal prison population as a whole. Defendant's declarations state that "COVID-19 is a serious disease," which "poses a serious risk to inmates and workers in detention facilities," and identify "features of these facilities can heighten risks for exposure, acquisition, transmission, and clinical complications," such as "population density in close confinement," "shared toilet, shower and eating environments" and limits on personal protective equipment. Beyrer Decl. ¶¶ 5, 11, 14; *see also* Meyer Decl. § II (Heightened Risk of Epidemics in Jails and Prisons). But significantly, Defendant's declarations also identify that "certain populations" are at greater health risk presented by the virus, including those who are older and persons with medical

conditions, including lung disease, heart disease, diabetes, those who are immunocompromised, and other conditions. Golob Decl. ¶ 3; Beyrer Decl. ¶¶ 16–18.

This Court recently granted compassionate release to an immunocompromised defendant whose cancer, chemotherapy and medications put him at substantially greater health risks on account of spreading COVID-19 in his facility. *See United States v. Edwards*, No. 6:17-cr-3, 2020 WL 1650406 (W.D. Va. Apr. 2, 2020). Here, Defendant has not presented any evidence of particularized health risk. *See* Dkt. 214 at 11 (PSR noting in 2011 that despite several past injuries, Defendant "reported his health to be good as he is not under a doctors [sic] care or taking any medications"). The Court notes that since Defendant has filed his brief, there have been several reported cases of COVID-19 (six inmates and two staff) at Fort Dix FCI where Defendant is incarcerated, but those are out of a total inmate population of nearly 3,000.[5, 6]

The Court finds that Defendant has not made a particularized showing that his conditions of confinement—as opposed to those conditions that inmates generally are subject to—are such as to justify immediate release, nor has he presented evidence of "individual medical conditions" that would render him "particularly susceptible to COVID-19." *See United States v. Dungee*, No. 7:15-cr-5, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020) (Conrad, J.); *United States v. Feiling*, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (similar holding, citing *Dungee* and *Edwards*). Accordingly, the Court concludes that Defendant's request for immediate release on account of COVID-19 must be denied.

---

[5] https://www.bop.gov/coronavirus/ (last visited Apr. 17, 2020).

[6] The Court also notes that since Defendant filed his brief, the Federal Bureau of Prisons implemented a 14-day lockdown of all its institutions, in which "inmates in every institution will be secured in their assigned cells/quarters to decrease the spread of the virus." *See* https://www.bop.gov/resources/news/pdfs/20200331_press_release_action_plan_5.pdf. The BOP has extended these measures through May 18, 2020.

Conclusion

Defendant is eligible to seek a reduced sentence under the First Step Act. On the merits of his request and considering the facts of this case and the § 3553(a) factors, and in particular, the seriousness of the offense, promoting respect for the law, and the nature and characteristics of the defendant, this Court will grant in part Defendant's First Step Act motion, Dkt. 262, and modify Defendant's sentence to a total term of 168 months' imprisonment on Count One, but not less than time served. The Court finds that this sentence is sufficient, but not greater than necessary, to comply with the § 3553(a) factors. Defendant's sentence shall remain unaltered in all other respects. Accordingly, this Court will, in an accompanying Order to follow, grant in part and deny in part Defendant's First Step Act Motion (Dkt. 262).

The Clerk of the Court is directed to send a copy of this Memorandum Opinion and the accompanying Order to Defendant and to counsel of record.

Entered:  This __20th__ day of April, 2020.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE